1            UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF OHIO
2                 WESTERN DIVISION

3

4

    UNITED STATES OF AMERICA,      Case No. 3:22-cr-00274-JRK-1
5                                  Toledo, Ohio
            Plaintiff,
6

7       vs.                        Wednesday, February 14, 2024

8

    AMANDA HOVANEC,
9
            Defendant.
10

11

12          TRANSCRIPT OF **CHANGE OF PLEA PROCEEDINGS**
           BEFORE THE HONORABLE JAMES R. KNEPP II
13               UNITED STATES DISTRICT JUDGE

14

15  APPEARANCES:

16

    For the Government:        **Alissa M. Sterling,**
17                             *Assistant United States Attorney*

18

    For the Defendant:         **David L. Klucas, Esquire**
19                             **Kenneth R. Bailey, Esquire**

20

21

    Official Court Reporter:   Stacey L. Kiprotich, RMR, CRR
22                             United States District Court
                               1716 Spielbusch Avenue, Suite 120
23                             Toledo, Ohio 43604
                               (419) 213-5520
24

    Proceedings recorded by mechanical stenography, transcript
25  produced by computer-aided transcription.

**Wednesday, February 14, 2024**

- - -

**(Afternoon Session)**

- - -

01:02:45      (On the record in open court at 1:02 p.m.)

THE COURT:  Good afternoon, everyone.

The next matter before the Court is the United States of America versus Amanda Hovanec.  It is Case Number 3:22-cr-274.

01:16:24      Ms. Hovanec is here in the courtroom.  She is joined at counsel table by her counsel, Attorneys Klucas and Bailey.

Here on behalf of the Government is AUSA Sterling, and she's joined at counsel table by Case Agent Russ from the

01:16:45      FBI.

It is my understanding that the matter comes on for a change of plea.

Ms. Hovanec was charged initially in a complaint and then an indictment back in May of 2022.

01:17:03      The charges I believe are violations of 21 USC 963, conspiracy to import a controlled substance, 21 USC 952(a), and 960(a)(1) and (b)(3), importation of a controlled substance, conspiracy to possession with intent in Count 4, and distribution of controlled substance in Count 5.

01:17:39      So she is not in Count 3; correct?

1          MR. KLUCAS:  That's correct.

2          THE COURT:  Okay.  So just to kind of give you

3   a little bit of an outline of how this is going to work,

4   Ms. Hovanec, we have to go through several steps.  It is not

01:18:05  5   as simple -- and I'm sure your counsel has told you, it

6   isn't a matter of you just coming in and me saying, hey,

7   what do you plead and you saying "guilty."

8          We have to go through and establish some things:

9          I have to make some findings.

01:18:19 10          We have to explain some things to you in a fair amount

11   of detail.

12          Then, at the end, we get to the part where I say, what

13   is your plea to, you know, this count and so forth.

14          I just want to say right up front, just because we

01:18:37 15   start this hearing doesn't mean we have to finish it.  Okay?

16   This isn't over until it is over.  So if at some point

17   before I get to the point where, you know, I say, how do you

18   plead, you want to change your mind and go back and we have

19   this thing set for trial coming up in a, you know, month or

01:18:54 20   so, we can still do that.  Okay?  So just because we start

21   this hearing doesn't mean we have to complete it.

22          Also, you've got two fine lawyers sitting on your

23   flank there.  I would anticipate and I'll instruct you, if

24   you've got any questions about anything as this is going on

01:19:14 25   today, I want you to ask me to take a break, and you can

1    talk to them.  And if you really need to talk to them about

2    something substantive that isn't just a matter of whispering

3    back and forth at counsel table, I will clear the courtroom

4    and let you guys have a private chat.  Okay?

01:19:29  5    Because it is critically important to me when we get

6    to the end of this and I say, did you understand everything

7    that just happened here, I need your answer to be "yes,"

8    not, "well, most of it" or "sort of."  It needs to be "yes."

9    Okay?

01:19:41  10    And the way we do that is that if something doesn't

11    sound exactly the way you expect it to or you don't

12    understand it, ask me to stop, and you can talk to them as

13    much as you want.  Okay?

14                    THE DEFENDANT:  Okay.  Yes.  Thank you.

01:19:54  15                    THE COURT:  All right.  I can tell right now

16    we're going to have a little problem hearing you, so let's

17    get the microphone a tiny bit closer to you.

18    I also tell everybody I assume there is fresh water in

19    the pitchers there, that it comes through a filter as

01:20:09  20    opposed to being dipped out of the pond out back.  So if you

21    need something to drink, go for it.

22    So just by way of the roadmap of what we're going to

23    talk about, we're going to make sure that you're competent,

24    that you understand who you are and where you are and what's

01:20:29  25    going on here.

1    We're going to make sure that you understand your

2    trial rights.  And the rules actually say that I have to go

3    through those in some detail, okay.  It is Rule 11, and it

4    talks about something called a colloquy, which isn't really

01:20:43  5    a word I would use.  You know, like, I would say a chat,

6    okay?  But it says colloquy, so if we were being

7    Shakespearian, we would talk about having a colloquy, but,

8    you know, I could possibly refer to it as a chat.

9    I have to make sure that you understand the nature of

01:20:58 10    the charges.  And part of understanding the nature of the

11    charges is reminding you, again, what the potential

12    punishments could be, which is exactly what happened back at

13    the time of your arraignment back in -- probably in May,

14    somewhere around there.

01:21:16 15    The charges were explained to you then and the

16    potential penalties.  Well, some places they call what we're

17    doing today a rearraignment, okay?  They don't call it a

18    change of plea hearing.  They call it a re-arraignment.

19    That's why, because a big part of what happens here today is

01:21:30 20    explaining that to you again.

21    Finally, I have to make sure that this is being done

22    voluntarily, that there's no, you know, backroom agreements

23    or side deals, everything is above board, nobody has made

24    any promises to you, nobody has threatened you, that the

01:21:45 25    reason you're doing this is because you're, in fact, guilty

1    as opposed to some other reason.  Okay?

2         So once we get through all of that stuff, then we will

3    get to the part where I say, what is your plea to Count 1,

4    et cetera, et cetera, et cetera.  Okay?

01:22:03  5         And because you're going to be answering questions in

6    court, that is testimony.  So probably like happened at your

7    arraignment where you were answering questions, you were

8    placed under oath.  So I'm going to begin by doing that.

9         Would you please raise your right hand.

01:22:17  10                   (Defendant was sworn.)

11              THE DEFENDANT:  Yes.

12              THE COURT:  Okay.  Will you please tell me

13    your full name.

14         You can put your hand down now.

01:22:29  15              THE DEFENDANT:  Sorry.

16         Amanda Lee Hovanec.

17              THE COURT:  And have you ever gone by any

18    other names?

19              THE DEFENDANT:  My maiden name, Amanda Lee

01:22:41  20    Green.

21              THE COURT:  Okay.  And how old are you?

22              THE DEFENDANT:  36.

23              THE COURT:  And in what town did you reside

24    before you were taken into custody?

01:22:53  25              THE DEFENDANT:  Wapakoneta.

1              THE COURT:  And are you presently married?

2              THE DEFENDANT:  Yeah.

3              THE COURT:  Yes?

4              THE DEFENDANT:  Yeah.  Yeah, the divorce was

01:23:04  5   never granted, so, yes.

6              THE COURT:  Okay.  Well, but --

7              THE DEFENDANT:  Widowed, I guess.

8              THE COURT:  Widowed.

9              THE DEFENDANT:  Sorry.

01:23:12 10             THE COURT:  So you were married to Mr. Hovanec

11   who is deceased?

12             THE DEFENDANT:  Yes.

13             THE COURT:  So you're not married to anyone

14   else?

01:23:20 15             THE DEFENDANT:  Right, correct.

16             THE COURT:  Okay.  And you got to understand,

17   I know the answer to some of these questions, but it's

18   partly getting to the making sure you understand everything

19   that's going on here.

01:23:33 20         You do have dependent children?

21             THE DEFENDANT:  Yes.

22             THE COURT:  How many?

23             THE DEFENDANT:  Three.

24             THE COURT:  And how old are they?

01:23:39 25             THE DEFENDANT:  The oldest is ten, and eight

1    and seven.

2                    THE COURT:  What level of education have you

3    completed?

4                    THE DEFENDANT:  My BSN, bachelor's degree.

01:23:53 5              THE COURT:  Okay.  So obviously, you can read

6    and write with no difficulty?

7                    THE DEFENDANT:  Right.

8                    THE COURT:  What type of employment did you

9    conduct most recently?

01:24:08 10             THE DEFENDANT:  I was an STNA at a hospital

11   and -- so nursing sort of field.

12                   THE COURT:  Okay.  So even though you're a

13   BSN, you were working as an STNA?

14                   THE DEFENDANT:  Yeah, because I'm not licensed

01:24:22 15  in the state of Ohio.  When I came back from Africa, I

16   didn't get licensed.

17                   THE COURT:  Okay.  How is your physical

18   health?

19                   THE DEFENDANT:  Good, good.

01:24:33 20             THE COURT:  Do you have any chronic illnesses

21   or conditions?

22                   THE DEFENDANT:  No.

23                   THE COURT:  Do you take any medicine?

24                   THE DEFENDANT:  No.

01:24:40 25             THE COURT:  Have you ever been under the care

1   of a doctor or a clinic or a hospital or a counselor or

2   anything like that for any sort of mental health situation?

3                   THE DEFENDANT:  During the divorce and prior

4   to the divorce, had been on antidepressants and anti-anxiety

01:25:07  5   pills.

6                   THE COURT:  Okay.  But you're not any more?

7                   THE DEFENDANT:  No, no.

8                   THE COURT:  Do you not need them any more?

9                   THE DEFENDANT:  No, I don't.

01:25:12  10                   THE COURT:  Okay.  As you sit here today, are

11  you under the influence of any drug, any medicine, any

12  alcohol, any substance of abuse that could in any way impair

13  your ability to understand what's going on here today?

14                   THE DEFENDANT:  No.

01:25:24  15                   THE COURT:  Is your mind clear?

16                   THE DEFENDANT:  Yeah.

17                   THE COURT:  You understand you're sitting in a

18  courtroom in a courthouse in Toledo, Ohio, and that you've

19  been charged with some pretty serious violations of federal

01:25:35  20  law.

21       Do you understand all of that?

22                   THE DEFENDANT:  Yeah.  Yes.

23                   THE COURT:  So I'm asking this question and

24  I'm just going to ask it to Mr. Klucas.  But, Mr. Bailey, if

01:25:50  25  you need to chime in with a different answer to anything he

1    says, let me know.

2         But let me ask you, Mr. Klucas, have you had any

3    difficulty communicating with Ms. Hovanec?

4              MR. KLUCAS:  I have not.

01:25:59  5              THE COURT:  Do you believe she understands the

6    nature and purpose of this hearing?

7              MR. KLUCAS:  I do.

8              THE COURT:  And do either you or, frankly,

9    Mr. Bailey or Ms. Sterling have any reservations at all

01:26:12  10   about her competence here today?

11             MR. KLUCAS:  I do not.

12             THE COURT:  Ms. Sterling?

13             MS. STERLING:  I do not.

14             THE COURT:  Okay.  Well, neither do I.

01:26:22  15        I've had the opportunity to interact with her here in

16   court.  I've observed her affect and demeanor.  I have asked

17   her some questions, and I've listened to her answers, all of

18   which have been entirely appropriate.  I don't see anything

19   in the world here that would cause me to question her

01:26:40  20   competence.

21        Therefore, I will find that she is, in fact, competent

22   and we will proceed.

23        Ms. Hovanec, have you had enough time to work with

24   your lawyers and talk with them while this case has been

01:26:51  25   pending?

1              THE DEFENDANT:  Yeah, yes.

2              THE COURT:  Okay.  I'm going to ask you the

3      next question and I'm going to put it in a little context,

4      so let me ask the whole question before you answer.

01:27:01  5      The question is going to be this:  Have you told them

6      everything there is to know about the case?

7              The context is this:  When you go to the doctor,

8      you've got to tell the doctor everything that's going on for

9      the doctor to be able to make -- and as a health care

01:27:16  10   professional, you would understand this.  You have to tell

11     the doctor everything that's going on.  You can't pick and

12     choose and say, well, I think he probably needs to know this

13     or she probably needs to know that, but I'm not going to

14     talk about this other thing that's going on.

01:27:28  15     You can't do that.  You've got to put all the cards

16     out on the table.

17             Now, we protect that conversation with a privilege.

18     So the doctor or you as a nurse, you can't talk about that

19     with anybody other than the patient, okay?  You can't go

01:27:43  20   talk -- you can't even call the police and say, hey, this

21     person is abusing drugs or something like that.  You have to

22     respect that confidentiality.

23             Same thing with your lawyer.  For your lawyers to give

24     you the best possible legal advice, you got to tell them

01:27:57  25   everything there is to know about the case.  You can't pick

1    and choose and tell them this but not that.  But we put that

2    same kind of privilege around your conversation with your

3    lawyer.  So you can, in so many words, bare your sole to

4    your lawyers, and they can't talk about it with anybody but

5    you.

6         With that context, have you told your lawyers

7    everything there is to know about this case?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Have you had the kind of

10   discussions that I would expect someone facing this

11   situation to have where you talk about should I go to trial,

12   should I not go to trial, what does the evidence look like,

13   what are my odds, how could I defend this?

14        Have you had those kind of conversations?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  Are you satisfied with the legal

17   representation which these guys have provided for you?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  I'm going to ask each of the

20   lawyers.

21        Mr. Klucas, can you assure me that you've adequately

22   prepared Ms. Hovanec at each and every stage of this

23   proceeding?

24                   MR. KLUCAS:  Yes, I can.

25                   THE COURT:  And same question, Mr. Bailey.

1        MR. BAILEY:  Yes, Your Honor.

2        THE COURT:  Okay.  I will certainly respect

3    that response from both counsel.

4        So Ms. Hovanec, we talked a minute ago about part of

01:29:11  5    the proceeding today is a re-arraignment.  We're at that

6    point of it right now.

7        I'm going to ask Ms. Sterling to remind us, and remind

8    you in particular, what it is that you're charged with in

9    the indictment and what the statutory penalties that could

01:29:28 10    be imposed for each of those violations of law could be.

11        So please listen carefully.

12        Ms. Sterling?

13        MS. STERLING:  Thank you, Your Honor.

14        As you noted at the outset of this hearing, this

01:29:39 15    defendant is named in four of the six counts of the

16    indictment.  And because each of them carries the same

17    penalty, I will reserve admonishment of the penalties until

18    the end if that is acceptable to the Court.

19        THE COURT:  That's fine.

01:29:55 20        MS. STERLING:  Count 1 charges a violation of

21    Title 21 United States Code Section 963, charge known as

22    conspiracy to import a controlled substance.

23        Count 2 charges a violation of Title 21, United States

24    Code Sections 952(a), 960(a)(1) and 960(b)(3).

01:30:15 25        Count 4 charges a violation of Title 21, United States

1       Code Section 846, charge known as conspiracy to possess with

2       intent to distribute and distribution of a controlled

3       substance.

4            Count 5 charges a violation of Title 21, United States

01:30:32 5       Code Sections 841(a)(1) and 841(b)(1)(C), charge known as

6       distribution of a controlled substance.

7            For each of the four counts I just articulated, the

8       indictment also alleges an enhanced penalty due to the use

9       of a controlled substance by this defendant which resulted

01:30:51 10      in the death of her husband identified in the indictment as

11      "T. H."

12           As such, the penalties for each of the four counts is

13      a mandatory minimum term of imprisonment of 20 years, up to

14      a maximum term of life, up to a $1 million fine, a period of

01:31:10 15      supervised release of at least three years, although the

16      Court could impose a term up to life, and a $100 special

17      assessment.

18           Again, those are the penalties per count, Your Honor.

19                THE COURT:  Thank you.

01:31:26 20          Do you understand all that, Ms. Hovanec?

21                THE DEFENDANT:  Yes.

22                THE COURT:  So under the Constitution and laws

23      of the United States, you have the right to have a trial.

24      You have a right to have a trial by a jury.

01:31:41 25          At that trial, you begin the case with what's called a

1       presumption of innocence.

2               What do I mean by that?

3               Well, the Government has to prove that you're guilty.

4       You don't have to prove that you're not guilty.  The

01:31:57  5     Government always has the burden of proof.  You start the

6       trial not guilty.  You stay that way unless and until the

7       Government proves, with proof beyond a reasonable doubt,

8       that you're, in fact, guilty, and the jury is instructed

9       that way.

01:32:12 10             The jury is instructed, the defendant is not guilty.

11      She stays that way unless and until the Government convinces

12      you with proof beyond a reasonable doubt that she is, in

13      fact, guilty.

14              Do you understand that?

01:32:23 15                    THE DEFENDANT:  Yes.

16                    THE COURT:  So if the case went to trial, you

17      would have the right to hear all the evidence, okay, so

18      there's no secret evidence.  The testimony would all be from

19      the witness stand.  The exhibits would all be, you know,

01:32:45 20     shown to everybody, including your lawyers and you.

21              You would have the right through your lawyers to

22      what's called confront the evidence.  You would have the

23      right to argue about the exhibits.  You would have the right

24      to cross-examine any witnesses that might take the stand and

01:33:00 25     testify.

1       And, again, the Government has the burden of proof.

2  You don't.  So you could put on a case if you wanted to, but

3  you wouldn't have to.  And the jury would be instructed that

4  the burden is on the Government, and you don't have to prove

01:33:19  5  a thing.

6       Do you understand all of that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  You'd have the ability to compel

9  the attendance of any witnesses that you wanted to come in

01:33:29 10  and testify on your behalf.

11       I just said you don't have to put on a case, but if

12  you wanted to, you would have the ability to issue what are

13  called subpoenas.  And those are court orders compelling the

14  attendance of anybody you wanted to have come in and testify

01:33:41 15  on your behalf at trial.  You would have that authority as

16  well.

17       You yourself would have the right to take the stand

18  and testify if you wanted to.  You would also have the

19  critically important right to not do that.

01:33:57 20       And the jury would be instructed frequently by me that

21  the defendant does not have to take the stand.  None of us

22  have to take the stand in our own criminal trial.  We don't

23  have any burden of proof.  The defendant doesn't have any

24  burden of proof.  And I would look them in the face and I

01:34:15 25  would tell them it would be a violation of their oath as

1    jurors if they somehow held it against you if you chose not

2    to testify at your trial.  It is that serious.

3         Do you understand?

4              THE DEFENDANT:  Yes.

01:34:29  5              THE COURT:  If the case went to trial, we

6    would bring in a whole bunch of prospective jurors, and we

7    do a process called voir dire.  Down south they call it voir

8    dire.  It sounds cooler.  But it's one of those Latin words

9    that's kind of hung around.

01:34:45 10         It just -- it is a process where we go through and we

11   interview jurors, trying to find out can a particular

12   individual be fair and impartial.

13         What do I mean by that?  Can they judge your case

14   based on the evidence that they see and hear in the

01:34:58 15   courtroom and follow the instructions of law that I give

16   them without regard to other stuff that might have happened

17   to them in the past or other things that they might -- you

18   know, just life experience, things they read or think they

19   know or ideas they might have about the way things ought to

01:35:21 20   be.

21         I try to weed those people out so I can find people

22   who can be fair and impartial and give you a fair trial.

23         Once I had a panel of individuals that I was convinced

24   could be fair and impartial, there would still be an

01:35:34 25   opportunity for both you and the Government to get rid of a

1    bunch more of them.  Those are called peremptory challenges.

2    And typically, the defendant would get ten of those and the

3    Government would get six of those.  And those are jurors

4    that you just get to excuse and you don't have to say why.

01:35:53 5    You can say, I just don't want this person to be a juror on

6    my case.  Okay, they're gone.  All right?

7         Once we got done with that, we would be left with a

8    jury of 12.  Those 12 individuals would have to consider

9    each defendant separately, if there was more than one

01:36:10 10    defendant, and, more specifically, they would have to

11    consider each count as against each defendant separately.

12         And they'd have to all agree.  Their verdict would

13    have to be unanimous, either guilty or not guilty, as to a

14    particular defendant on a particular count.  And they'd have

01:36:28 15    to do that as many time as there are defendants and counts.

16    But they would have to agree, unanimously, guilty or not

17    guilty before they are done with that count and go on to

18    another one.

19         Do you understand you don't have to plead guilty?

01:36:45 20              THE DEFENDANT:  Yes.

21              THE COURT:  You don't have to plead guilty

22    even if you are guilty.  You have the right to have a trial

23    like we just talked about.  And, you know, we already have a

24    trial date scheduled.  You have a right to have lawyers

01:37:02 25    represent you.

1          If you somehow were unable to afford to continue to

2     provide your own counsel, the Court would appoint counsel to

3     represent you.

4          Do you understand all that?

01:37:09  5               THE DEFENDANT:  Yes.

6               THE COURT:  If the case went to trial and if

7     you were convicted, you would have the right to appeal your

8     conviction and your sentence.

9          You're not entering into a plea agreement here, so

01:37:22 10     your appellate rights are preserved as much as they are, but

11     I do caution you that the ability to appeal the fact of your

12     conviction is probably corralled a little bit by virtue of

13     the fact that you're going to plead guilty, and presumably

14     you're going to admit that you did what the Government says

01:37:40 15     you did.

16          So that's going to, I believe, take some of the wind

17     out of the sails in terms of your ability to appeal your

18     conviction.  Okay?

19          Do you understand that?

01:37:50 20               THE DEFENDANT:  Yes, yes.

21               THE COURT:  But you'll still have all your

22     appellate rights as to sentence and everything else that's

23     happened up in the case.  It is just the fact of the

24     conviction, the fact that you plead guilty I believe

01:38:02 25     undermines the ability to take an appeal from, like,

1    insufficiency of the evidence or something like that.

2         So if you plead guilty here today, I'm going to refer

3    the matter to the United States Pretrial and Probation

4    Office.  They are going to prepare what's called a

01:38:25  5    presentence investigation report.  Those can be thick.  I

6    mean, I just read one that's 30-some pages, all right?

7         They are a detailed analysis of what happened and who

8    did it, okay?  And it will go through your life history and

9    it will go through the facts of the crimes and all of that

01:38:49 10    kind of stuff.  And it will ultimately come up with a

11    guideline, which we'll talk about a little bit, a

12    recommended sentence.  But it's got a bunch of facts in it

13    also.

14         What I need to make sure you understand is I don't

01:39:06 15    know what that ultimately -- so the United States Sentencing

16    Guidelines, it's like this thick and then there is a couple

17    of appendices to it.  But it is thick, and it will -- as

18    part of preparing that presentence investigation report, the

19    officer is going to go through and find -- you know, find

01:39:22 20    what these crimes are and for each crime come up with what's

21    called a based offense level.  And then -- you know, with

22    the enhancement for the resulting-in-death spec on each of

23    these counts.

24         And then there can be things that cause that to go up

01:39:38 25    and there can be things that cause it to go down, but it is

1    sort of a mathematical go through and apply these things.

2         And even when all of that's done, you come up with an

3    offense level and you come up with a criminal history, okay?

4    And you just go on this grid.  And the offense levels go

01:40:00  5    down here, and the criminal history goes across the top.

6    And you just go down and say, okay, this many months to this

7    many months.

8         Now, overlay on that is the statute here, because the

9    statute has a big mandatory minimum.  So no matter what the

01:40:13 10    guidelines say, you don't go below the statutory minimum.

11    And you can't go above the statutory maximum there, but I

12    think the statutory maximum is life, so that's not probably

13    going to be in play.  Above the -- or below the statutory

14    minimum, it just raises up the guideline to the statutory

01:40:32 15    minimum at that point.

16         But what I need you to be crystal clear about, I don't

17    know what your guideline finally is going to be at the end

18    of that.  Okay?

19              THE DEFENDANT:  Okay.

01:40:43 20              THE COURT:  And even to take it one step

21    further, I don't know if I'm going to follow the guideline

22    or not as I sit here today.  I can't tell you.  It would be

23    improper because it would be dishonest.  I honestly don't

24    know what I'm going to do by way of sentencing here until I

01:41:01 25    get that presentence investigation report.

1              THE DEFENDANT:  Okay.

2              THE COURT:  You might have an idea what you

3      think I'm going to do --

4              THE DEFENDANT:  No.

01:41:06   5              THE COURT:  -- from talking to your lawyers.

6         Well, but you might because Mr. Klucas certainly has a

7      lot of experience in front of me, Mr. Bailey certainly has

8      been around the courthouse a time or two.  But they may have

9      some idea about what they think I will likely do in this

01:41:23  10      case, but nobody is sure about that.

11         And what you need to understand is if I happen to

12      sentence you more severely than what they might have

13      suggested to you or what you might even be thinking

14      yourself, that might be a reason to take an appeal, okay,

01:41:40  15      and get me reversed.  But it will never be a reason to come

16      back and withdraw your guilty plea here today.

17              THE DEFENDANT:  Right.

18              THE COURT:  All right?  The guilty plea is

19      unhooked from what the sentence could be here.

01:41:51  20         Do you understand that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  All right.  There will be some

23      consequences to your civil rights by virtue of being

24      convicted of any of these charges.

01:42:06  25         Some of those are for a while.  Some of those are

1    forever, okay?  Let's talk about the "for a while" stuff

2    first.  Okay?

3        So things like your right to vote, your right to hold

4    public office, your right to serve on a jury, those are

01:42:21  5    taken away for a while.  They are restored to you once

6    you're no longer under sentence, at least under Ohio law.

7    Every state might be a little bit different about that, but

8    you could expect for those rights to be restored to you if

9    at some point you're not under sentence anymore.

01:42:38  10        One right that will never be restored is your right to

11    possess a firearm.  If you're convicted of a felony in

12    federal court under the current state of the law, you will

13    never for the rest of your life ever legally possess a

14    firearm or ammunition.

01:42:52  15        Do you understand that?

16                THE DEFENDANT:  Yes.

17                THE COURT:  So we talked about what the

18    sentence could look like in terms of incarceration.

19        We talked about the possibility for on the other side

01:43:11  20    of incarceration there to be something called supervised

21    release.  That's a place where a probation officer is

22    looking after you, okay?

23        I don't impose supervised release as punishment.  I

24    impose it as an opportunity to help somebody not make bad

01:43:29  25    decisions any more, okay.  And so that's way more on the

1    edge of -- or under the category of rehabilitation in my

2    mind than punishment.  But there will presumably be some

3    period of supervised release following any jail sentence

4    that gets imposed here.

01:43:48  5    If you were to somehow violate that, it could get

6    revoked and cause you to go back to jail again.  So we have

7    to talk about that.

8    It is possible that you could be ordered to pay

9    restitution as part of your sentence.

01:44:09  10    It is also possible that you could face -- as part of

11    your restitution, you could be ordered to pay some or all of

12    your cost of confinement and supervision.  That seems less

13    likely to me, but there is the possibility of being ordered

14    to pay some restitution as part of your sentence.

01:44:28  15    The special assessment of $100, I know that seems like

16    so minor compared to everything else that we're talking

17    about, but it is real.  I have to say $100 per count at the

18    time of sentencing.

19    So ultimately, we talked about how the guidelines

01:44:51  20    would be calculated, and those just go into the mix at

21    sentencing.  There is a statute called 18 U.S.C.

22    Section 3553(a), and it goes through in pretty fine detail

23    telling me everything that I have to look at to figure out

24    what is the right sentence.  And the magic words they use

01:45:08  25    are "what is sufficient but not excessive."  All right?

1    So that's my guidance in the navigational channel

2    here.  I've got to be sufficient but not excessive.  I've

3    got to look at, you know, what happened, the nature and

4    characteristics of the crime.  I got to look at who did it,

01:45:26 5    you know, what brings this person before me.

6        We have to look at a deterrent effect, okay, both

7    internal and external deterrence.  So the sentence has to

8    deter you from committing further violations of the law, but

9    it also has to potentially deter other people who see what

01:45:48 10   happens to you to not do that.  Okay?  So there's a couple

11   of components of deterrence there.

12       Sometimes one of the things we have to take into

13   consideration is the need to protect the public from further

14   crimes.  In some instances where there is a danger that

01:46:03 15   somebody is going to recidivate, come back and commit more

16   crimes, one way we prevent that is by removing them from

17   society.  So there's that aspect we have to take into

18   consideration.

19       And finally, I have to look at what can I do in

01:46:18 20   fashioning a sentence to help you, whether it's vocational

21   training/treatment, mental health training/treatment,

22   substance abuse, all of that kind of stuff.  I have to look

23   at what can I do to make you a better person on the other

24   side of this.  Okay?  And I will.

01:46:35 25       Those are the things that I will be looking at.

1          So I don't let people plead guilty unless they admit

2     they did what the Government says they did.  And not every

3     court is that way, but federal court, at least in the

4     Northern District of Ohio, is that way, all right?

01:46:57  5          And the way we accomplish that is we ask the

6     Government to give what's called a factual basis for the

7     plea.  So my expectation here is in a minute, Ms. Sterling

8     is going to say, if this case had proceeded to trial, the

9     Government would have established with proof beyond a

01:47:13 10    reasonable doubt, and then she's going to tell me a bunch of

11    things.  All right?

12          When she gets done, I'm going to ask you, "Is she

13    right?"  And if you say yes, it will be like you just said

14    that stuff, okay?  So rather than me asking you to tell me

01:47:26 15    what you did, I'm going to ask her to tell me what she could

16    prove that you did, ostensibly, and then I'm going to ask

17    you if she's right.  So please listen carefully.  Okay?

18                    THE DEFENDANT:  Okay.

19                    THE COURT:  Ms. Sterling?

01:47:37 20                    MS. STERLING:  Thank you, Your Honor.

21          If this case had proceeded to trial, the Government

22    would have produced evidence to prove beyond a reasonable

23    doubt the following:

24          On April 24th, 2022, just after 7:00 p.m., the

01:47:51 25    defendant forcibly injected her estranged husband, T. H., in

1    the shoulder with a Schedule I or II controlled substance,

2    specifically etorphine, commonly known as M99.

3            As a result of this injection, T. H. died.

4            A subsequent autopsy by the Lucas County Coroner

01:48:10  5    determined that he would not have died but for this

6    defendant's injection of this etorphine into his system on

7    this date.

8            The defendant received the etorphine at her residence

9    in Auglaize County, Ohio, after she and her boyfriend,

01:48:27 10    Anthony Theodorou, a charged co-defendant in this case, had

11    previously discussed killing her husband and agreed that

12    etorphine, or M99, would be a viable option for doing so.

13            As part of their plan, Theodorou obtained the

14    substance in South Africa and caused it to be imported into

01:48:45 15    the United States to the defendant at her residence in

16    Auglaize County, Ohio, which is in the Northern District of

17    Ohio.

18            Two days later, on April 26th, 2022, T. H. was

19    reported missing, and the investigation to find him began.

01:49:04 20            When the location information from T. H.'s phone led

21    law enforcement to an area near Dayton, Ohio, investigators

22    found his car, which appeared to be abandoned, with no fixed

23    license plates attached.

24            While processing the vehicle, investigators located a

01:49:20 25    dash camera in the front windshield.  The video on the

1    camera showed T. H. dropping off his three daughters to

2    defendant and her mother, co-defendant Anita Green, who were

3    waiting outside their house for him.

4         After the children exited T. H.'s car and went inside

01:49:39 5   the residence, T. H. can be heard on the video saying, "What

6    the heck are you doing?  Did you just assault me?"

7         T. H. followed that by saying, "Get away from me.  Get

8    off of me."

9         T. H. and the defendant then enter the screen of the

01:49:55 10  video from the passenger side of the vehicle.  The defendant

11   is pulling on T. H.'s hand and shirt as he tries to use his

12   cell phone.

13        The defendant then aggressively wrestles for his

14   phone, eventually knocking it out of his hand onto the

01:50:13 15  ground.

16        She then pulls on T. H.'s back and neck and gets him

17   to the ground.  She held him around the neck, not choking

18   him, until his body went limp.

19        The defendant immediately picked up T. H.'s cell phone

01:50:28 20  and took off what appears to be a smart watch and turns off

21   the car, thereby stopping the video as T. H. laid

22   unconscious and apparently unresponsive on the driveway.

23        When the video resumed, T. H.'s car is being backed

24   out of the driveway.

01:50:44 25       The defendant can be heard talking in the background

1    as the car is pulled out of the driveway and later driven to

2    a location near Dayton, Ohio, where it was found.

3         During a subsequent interview with the defendant, she

4    admitted these facts and others.

01:51:02  5              THE COURT:  Mr. Klucas wants to talk to you

6    about something, Ms. Hovanec.

7                    MR. KLUCAS:  Yes.

8                    THE COURT:  Turn your mic off if you haven't.

9                    MR. KLUCAS:  Yeah.  Thank you.

01:51:15  10         (Discussion held off the record between Mr. Klucas and

11   defendant.)

12                   THE COURT:  Did you guys turn the mic back on?

13                   MR. KLUCAS:  We did.

14                   THE COURT:  Okay.  Ms. Hovanec, did you hear

01:51:25  15   all of that?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  Is she right?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Did you do that?

01:51:33  20                   THE DEFENDANT:  Yeah.

21                   THE COURT:  Do you wish to make any

22   corrections to anything she just said?

23                   THE DEFENDANT:  No.

24                   THE COURT:  Mr. Klucas, you heard the factual

01:51:50  25   basis.

1        Do you wish on behalf of Ms. Hovanec to offer any

2    additions or corrections to the factual basis which

3    Ms. Sterling offered?

4            MR. KLUCAS:  We do not.  It is consistent with

01:52:01  5    the discovery disclosures.

6            THE COURT:  I mean, we talked in chambers

7    about something that -- but I think Ms. Sterling edited

8    that, so -- there was a question about how the substance was

9    received in her earlier proposal, and she -- I think she

01:52:21  10    said it the way I believe we all talked about in chambers,

11    which was that the substance was, in fact, received at the

12    residence in Auglaize County, without regard to whether it

13    came in the mail or Mr. Theodorou brought it.

14            MR. KLUCAS:  That is correct.

01:52:38  15            THE DEFENDANT:  Correct.

16            THE COURT:  So again, I'm going to ask you one

17    last time.

18        There is just nothing about that that you disagree

19    with, right, Ms. Hovanec?

01:52:46  20            THE DEFENDANT:  Correct.

21            THE COURT:  Okay.  Ms. Hovanec, what is your

22    plea to Count 1 of the indictment?

23            THE DEFENDANT:  Guilty.

24            THE COURT:  What is your plea to Count 2 of

01:53:07  25    the indictment?

1                    THE DEFENDANT:  Guilty.

2                    THE COURT:  What is your plea to Count 4 of

3        the indictment?

4                    THE DEFENDANT:  Guilty.

01:53:14  5          THE COURT:  And what is your plea to Count 5

6        of the indictment?

7                    THE DEFENDANT:  Guilty.

8                    THE COURT:  Did anyone make any threats to you

9        to cause you to say that just now?

01:53:26 10          THE DEFENDANT:  No.  No, Your Honor.

11                   THE COURT:  Did anyone promise you anything to

12       get you to say that just now?

13                   THE DEFENDANT:  No.

14                   THE COURT:  Did you tell me that you're guilty

01:53:36 15      of those counts because you did what is alleged in those

16       counts and you're, in fact, guilty?

17                   THE DEFENDANT:  Yes, Your Honor.

18                   THE COURT:  Since you acknowledge that you

19       are, in fact, guilty as charged in Counts 1, 2, 4 and 5 of

01:53:58 20      the indictment, relying upon the answers given by you here

21       in court, in the presence of your counsel and members of the

22       public, and also relying upon the remarks of counsel for

23       both sides, I hereby make or renew the following findings:

24            I find that the defendant is competent.

01:54:19 25           I find she had the assistance of counsel.

1      I find she was advised of her Constitutional and trial

2   rights which are being waived knowingly and voluntarily.

3      I find the plea itself was made knowingly and

4   voluntarily, with an understanding of the charge, the

01:54:38  5   penalties and effect of the plea and upon an adequate

6   factual basis.

7      Therefore, at this juncture, I will accept your pleas

8   of guilty to those four counts.  As we just discussed, I

9   will adjudicate you guilty of those crimes.

01:54:58 10      I will immediately refer this matter to the United

11   States Pretrial and Probation Office for the preparation of

12   a presentence investigation report.

13      Sentencing will take place in this case at some point

14   out in the future.  It will be set by separate order, but it

01:55:21 15   will be not less than 14 weeks from today, because we've got

16   to give the Pretrial and Probation Office time to prepare

17   the report.

18      And so there will be a separate sentencing order that

19   will have the important dates for counsel in there in terms

01:55:38 20   of objections and so forth.  But I suspect Jennifer will be

21   accomplishing that with a phone conference or email traffic

22   with counsel going forward, so I'm not going to set the

23   sentencing date today other than to say it will be at least

24   14 weeks from today.

01:56:00 25      (Discussion off the record between counsel.)

1     THE COURT:  Ms. Hovanec, it is important to me

2 that you cooperate with the probation officer who prepared

3 the presentence investigation report.  If you fail to

4 cooperate with that probation officer, they're going to call

01:56:38  5 it to my attention.  And that will be something that I will

6 take into consideration when determining what the

7 appropriate sentence is for your case, and particularly

8 whether to grant credit for something called acceptance of

9 responsibility, which typically is granted to folks who

01:56:55 10 enter into a guilty plea.  However, you can place that in

11 some jeopardy if you do not cooperate with the probation

12 officer.

13   Now, you have the ability to have your counsel with

14 you at that meeting, and I would encourage you to do that

01:57:11 15 because it is a big deal.  It is important, that meeting.

16 So I'm not telling you you have to have your lawyers there,

17 but if I were you, I would.  But I'm telling you you have

18 the right to do that.  Okay.

19     THE DEFENDANT:  Okay.

01:57:21 20     THE COURT:  So you have the right to have your

21 counsel here at every -- every important thing that happens

22 in this case, you have the right to have your lawyers there

23 with you, and that would certainly qualify as --

24    (Court Reporter clarification)

01:57:37 25     THE COURT:  It certainly qualifies as an

1  important event in the case, your interview with the

2  probation officer.

3      That may be the only time in history you've ever not

4  been able to hear me, because normally I talk too loud.

01:57:50  5  Okay.  But in my defense, there's construction going on

6  outside.

7      Ms. Sterling, are you satisfied with the thoroughness

8  and voluntary nature of both the explanation of rights to

9  Ms. Hovanec and the knowing and voluntary nature of the plea

01:58:15  10  which we obtained here today?

11          MS. STERLING:  I am.

12          THE COURT:  And, Mr. Klucas, are you satisfied

13  that I've adequately explained your client's rights to her,

14  that her plea here today was made knowingly and voluntarily

01:58:28  15  in every respect?

16          MR. KLUCAS:  Yes, I'm satisfied.

17          THE COURT:  And perhaps most importantly,

18  Ms. Hovanec, did you understand everything that just

19  happened here?

01:58:38  20          THE DEFENDANT:  Yes.

21          THE COURT:  Any questions at all about

22  anything before we adjourn?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  All right.  Then we will be

01:58:43  25  adjourned.

1           MR. KLUCAS:  Thank you, Judge.

2           (Proceedings adjourned at 1:58 p.m.)

3                     * * * * *

4                 **C E R T I F I C A T E**

5

6       I certify that the foregoing is a correct transcript

7   of the record of proceedings in the above-entitled matter

8   prepared from stenotype notes of Stacey L. Kiprotich taken

9   on the date and time previously stated above.

10

11          */s/ Lance A. Boardman*          *04-09-2024*
            *Lance A. Boardman, RDR, CRR*          *DATE*
12

13

14

15

16

17

18

19

20

21

22

23

24

25