IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:22CR274 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP, II |
| | ) | |
| v. | ) | |
| | ) | |
| AMANDA HOVANEC, | ) | GOVERNMENT'S BRIEF ON |
| ANTHONY THEODOROU, | ) | RESTITUTION |
| ANITA GREEN, | ) | |

Defendants.

Now comes the United States of America, by and through its counsel, Rebecca C. Lutzko, United States Attorney, and Michelle Baeppler, Alissa M. Sterling, and Joseph Z. Czerwien, Assistant United States Attorneys, and submits the following Sentencing Brief regarding the issues of loss and restitution.

## FACTS

The relevant facts concerning the charged offenses are detailed in the Presentence Reports ("PSRs") of each Defendant, but a brief summary is provided below for the sake of clarity.

In or around February 2022, Defendant Anthony Theodorou shipped a vial of Etorphine, a Schedule I drug, to Defendant Amanda Hovanec. The intended use of this drug was to kill the victim, T.H., in this case. The drug was delivered on March 1, 2022.

On April 24, 2022, T.H. and his three minor children (the "Minor Victims") drove to Defendant Anita Green's home, where Defendant Hovanec also lived at the time. T.H. dropped off the Minor Victims with Defendant Hovanec, pursuant to the current custody arrangement and

recent court order. As T.H. was unloading the children's car seats from his car, Defendant Hovanec ambushed him and injected him with a syringe filled with the Etorphine. T.H. died within minutes.

Defendant Hovanec then drove T.H.'s car to Dayton, Ohio, followed by Defendant Theodorou, to dispose of it. Defendant Hovanec removed the license plate from the car and put it in a nearby trash bin. Defendant Hovanec also disposed of T.H.'s iPhone and Apple Watch, along with the syringe and vial of Etorphine.

In the early morning hours of April 25, 2022, Defendant Green drove Defendants Hovanec and Theodorou in Hovanec's SUV, with T.H.'s body in the trunk, to a remote rural intersection in order to dispose of the body. Defendant Green left after Defendants Hovanec and Theodorou removed the body from the SUV and began work to bury it in a shallow grave. Defendant Green returned a few hours later to pick up the other two Defendants.

## ARGUMENT

The Government submits this brief to set forth the at-issue restitution amounts for which each Defendant is responsible. In Section I, the loss issues are addressed in general terms. In Section II, loss and restitution issues are addressed as to each individual Defendant.

I. **THE COURT SHOULD ORDER RESTITUTION TO THE VICTIMS FOR THE FULL MEASURE OF LOSS**

    A. **18 U.S.C. § 3663 SETS FORTH THE RELEVANT CRITERIA FOR DISCRETIONARY RESTITUTION**

Restitution orders are authorized by statute (18 U.S.C. §§ 3663, 3664) and are distinct and separate from the United States Sentencing Guidelines. "Although the guidelines mandate imposition of restitution where allowable under the statutes, the restitution statutes function independently from the guidelines and do not rely on the guidelines for their validity." *United States v. Sosebee*, 419 F.3d 451, 462 (6th Cir. 2005).

Restitution is punishment. *United States v. Schulte*, 264 F.3d 656 (6th Cir. 2001); *see also United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001) (restitution is "punitive rather than compensatory in nature"). Restitution "is a criminal penalty and a component of the defendant's sentence." *United States v. Adams*, 363 F.3d 363 (5th Cir. 2004) (quoting *United States v. Chaney*, 964 F.2d 437, 451 (5th Cir. 1992)).

In a case like this one, restitution is discretionary. 18 U.S.C. § 3663 sets forth the process for the court to consider restitution. The court must determine what losses each victim suffered, and factor that into the decision of whether to impose restitution. *See* 18 U.S.C. § 3663(b).

The sentencing court determines the loss amount. The amount of restitution should be equal to the "amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the Defendant." 18 U.S.C. § 3664(f)(1)(A); *see also Sosebee*, 419 F.3d at 462 (emphasizing that the court determines the relevant facts for a restitution order).

The court must make a finding as to loss amount by a preponderance of the evidence using a reasonable estimate predicated on the facts of the case. *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006) (citing *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005)). The court "need only make a reasonable estimate" of the amount of loss. *United States v. Jones*, 641 F.3d 706, 712 (6th Cir. 2011) (citing U.S.S.G. § 2B1.1 cmt. N. 3(C)). Specific findings are not required; instead, the court may rely on information with a "sufficient indicia of reliability to support" the "probably accuracy" of the amount of restitution. *United States v. Jackson-Randolph*, 282 F.3d 369, 386 (6th Cir. 2002) (internal quotations omitted). It is appropriate to extrapolate restitution losses in those cases where "'a precise calculation of the

3

loss is simply not feasible.'" *United States v. Carmichael*, 676 Fed. App'x 402, 406 (6th Cir. 2017) (quoting *United States v. Tipton*, 269 Fed. App'x 551, 561 (6th Cir. 2008)).

In determining whether to impose restitution, the court must consider both a victim's loss and "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). The defendants bear the burden of demonstrating their own financial circumstances.

**B. THE VICTIMS HERE INCLUDE THE DECEASED VICTIM AND HIS THREE MINOR CHILDREN**

18 U.S.C. § 3663 defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered," and includes, in the case of a deceased victim, the "representative of the victim's estate." 18 U.S.C. § 3663(a)(2). Here, T.H.'s mother serves as his estate administrator and is the representative of T.H.'s estate for purposes of this proceeding. And, as shown below, T.H.'s three minor daughters were also directly and proximately harmed as a result of these offenses, and accordingly they should also be considered victims in their own right.

The statute grants a district court the discretion to order a defendant to make restitution to a victim of a crime of violence who has suffered a bodily injury or pecuniary loss as a result of that crime. *See* 18 U.S.C. § 3663(a) and (b); *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015); *United States v. Flucas*, No. 2:17-cv-00209-KJM, 2019 WL 6250710, at *2 (E.D. Cal. Nov. 21, 2019). The definition of "victim" is broad and includes "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered[.]" 18 U.S.C. § 3663(a)(2); *see also United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012) (finding that under the MVRA, sentencing courts must order restitution for a victim's "actual loss directly

4

and proximately caused by the defendant's offense of conviction"). In the case of an offense that "involves as an element a scheme, conspiracy, or pattern of criminal activity, *any person* directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern may be awarded restitution." 18 U.S.C. § 3663(a)(2) (emphasis added); *United State v. Hughey*, 147 F.3d 423, 437 (5th Cir. 1998).

Additionally, "victim" is defined broadly, family members may also be considered victims in their own right where they suffered pecuniary losses as a result of the defendant's criminal conduct. *See* 18 U.S.C. § 3664(j)(1); *United States v. Price*, 906 F.3d 685, 689 (7th Cir. 2018) (finding that the family members were victims in their own right when they had to pay funeral expenses as a result of the murder); *United States v. Douglas*, 525 F.3d 225, 254 (2d Cir. 2008) (recognizing that a father would be entitled to funeral-related expenses incurred in the burial of his adult son and, further, lost income, in the form of his expenditure of accrued annual leave to assist in the investigation and attend court proceedings).

The "[d]efendant's conduct need not be the sole cause of the loss," but it cannot be "too attenuated (either factually or temporally)." *United States v. Collins*, 854 F.3d 1324, 1336 (11th Cir. 2017) (citing *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007)). A person is "proximately harmed" when the harm is "a reasonably foreseeable consequence of the criminal conduct." *United States v. Schenck*, No. 20-19, 2023 WL 3019959, at *6 (E.D. La. April 20, 2023) (citing *United States v. Munn*, 837 F. App'x 293, 296 (5th Cir. 2020)); *United States v. Collins*, 854 F.3d 1324, 1336 (11th Cir. 2017); *see also United States v. Washington*, 434 F.3d 1265, 1266 (11th Cir. 2006) (upholding an order of restitution where police vehicles were damaged as a result of the defendant fleeing after robbing a bank because flight was a natural component of the bank

5

robbery and the defendant could have foreseen that any ensuing high-speed chase would result in property damage).

In *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010), the Sixth Circuit reasoned that under the plain language of 18 U.S.C. § 3771 (Crime Victim's Rights Act) a person may qualify as a victim even though she may not have been the target of the crime, as long as she suffers harm as a result of the crime's commission. *Id*. at 351. In making this determination, a sentencing court must (1) first look at the offense of conviction, based solely on the facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were "directly and proximately harmed as a result of the commission of that federal offense." *Id.* (internal quotation marks and citation omitted). *Id*. The requirement that a victim be directly and proximately harmed encompasses the traditional "but for" and proximate cause analyses. *Id.* at 350.

"But-for" causation is "not a difficult burden to meet," and there can be many but-for causes. *Schenck*, 2023 WL 3019959, at *6 (citing *Munn*, 837 F. App'x at 295). The inquiry is whether the harm to the victim would have occurred in the absence of the defendant's conduct. *Schenck*, 2023 WL 3019959, at *6; *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) (a person is directly harmed when the offense is the but for cause of that harm, and she is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct). Where the causation standard is satisfied, "the amount of that loss" should be included in the restitution order. *See Eyraud*, 809 F.3d at 467.

As applied here, the victims in this case are T.H. and his three minor children. These four victims have all been directly and proximately harmed as a result of Defendants' criminal wrongdoing. T.H. lost his life as a result of Defendants' Hovanec and Theodorou's criminal

6

activity. Their administration of the Etorphine was the direct and intended cause of T.H.'s death. And T.H.'s estate incurred costs and the loss of T.H.'s property in the course of Defendants Hovanec and Theodorou's attempts to cover up their crime. As such, T.H. is a "victim" within the statutory definition, to whom Defendants Hovanec and Theodorou are liable for restitution.

Likewise, the Minor Victims were also directly and proximately harmed as a result of all three Defendants' criminal activity. The psychological trauma of losing their father due to their mother's criminal activity is a reasonably foreseeable result from Defendants Hovanec and Theodorou's administration of the Etorphine. And the Minor Victims have directly suffered such harm, for which they are currently seeking counseling. Their own grandmother's—Defendant Green—participation in the cover-up would reasonably lead, and has led, to additional psychological harm to the Minor Victims directly traceable to Defendant Green's own actions.

As such, all three Minor Victims are also "victims" within the statute.

### C. THE REQUESTED RESTITUTION CATEGORIES ARE PERMITTED UNDER 18 U.S.C. § 3663

The Government seeks restitution for T.H.'s estate in four categories: (1) lost income; (2) funeral expenses; (3) damaged property; and (4) expenses incurred by the estate's representatives for participating in this proceeding. The Government also seeks restitution for the Minor Victims for the amount incurred and reasonably expected to be incurred for psychological care for the harm resulting from Defendants' crimes. 18 U.S.C. § 3663 permits restitution for each of these categories.

#### 1. Restitution Sought for T.H.'s Estate

*Lost Income – 3663(b)(2)(C)*. In an offense resulting in bodily injury to a victim, the Court may require that the defendant "reimburse the victim for income lost by such victim as a result of such offense." 18 U.S.C. § 3663(b)(2)(C). This restitution for lost income includes lost

7

future income that a victim would have earned but-for the at-issue criminal conduct. *See, e.g.*, *United States v. Messina*, 806 F.3d 55, 69 (2d Cir. 2015); *United States v. Serawop*, 505 F.3d 1112, 1118-21 (10th Cir. 2007).

Here (and in all cases involving lost future income), the government's loss calculation for T.H.'s future income is necessarily extrapolated due to the Defendants' culpable conduct in causing the death of the victim. *E.g.*, *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 546 (1983) ("[B]y its very nature the calculation of an award for lost earnings must be a rough approximation. . . . . [T]he lost stream [of income] can never be predicted with complete confidence."). "While calculations of future lost income must be based upon certain economic assumptions, the concepts and analysis involved are well-developed in federal law, and thus the district court is not without persuasive analogy for guidance." *United States v. Cienfuegos*, 462 F.3d 1160, 1169 (9th Cir. 2006).

In determining future lost income, the first step is to decide the length of time that income would be obtained. *See Pfeifer*, 462 U.S. at 533. For wages, this is usually determined by the age in which the person would likely retire. The next step is determining the after-tax wages and other fringe benefits. *See id.* at 534. Often the analysis starts with the person's wages at the time, but the analysis should include the increase in wages that likely will occur over time. *See id.* at 535. After adding the wages and other income over applicable periods of time, the total amount is then discounted by a reasonable rate. *See id.* at 537.

The following table includes the Government's calculation regarding the loss to the deceased victim's estate for future wages and income. His salary at the time of death forms the

basis for his projected future earnings.[1] The Government conservatively projects that any future salary increases would have been cost-of-living adjustments to account for inflation. Accordingly, promotion potential and performance-based enhancements are not included. The total earnings figure accounts for how long the victim would have reasonably expected to continue working and his government pension payments upon retirement age. Future income included within that projection is then discounted to present value using the 30-year maturity treasury yield as of April 22, 2022, the last business day prior to the victim's death, because "[t]he discount rate should be based on the rate of interest that would be earned on 'the best and safest investments.'" *Pfeifer*, 462 U.S. at 537.[2] Income that the victim would have earned but for the criminal conduct is neither discounted nor subject to pre-judgment interest.

**Calculation of Lost Income Restitution**

| 2022 Wage Rate (Post-Tax) | $103,055 ($131,473 pre-tax) |
|---|---|
|  |  |
| Victim's Age at Death | 36 |
| Life Expectancy[3] | 76 |
| Minimum Retirement Age[4] | 57 |
| Additional Years Expected to Work | 21 |

---

[1] Due to the victim's death in April 2022, wage history for the full year is not available. The projections included herein are based on an annualized wage at his latest 2022 salary – $131,473 ($103,055 post-tax). *See* Ex. A.

[2] See https://www.treasury.gov/resourcecenter/data-chart-center/interest-rates/Pages/TextView.aspx?data=yield..

[3] https://www.cdc.gov/nchs/data/nvsr/nvsr72/nvsr72-12.pdf. The applicable data is from 2021, when the deceased victim was 35. Accordingly, the life expectancy number taken here – 41.0 additional years – reflects the typical remaining life expectancy for a 35-year-old male of "all origins."

[4] Eligibility (opm.gov). The victim worked as a civilian engineer for the Department of the Navy in 2008 and transferred to the State Department in 2013, giving him over 13 years of creditable federal service at the time of his death. Given his Minimum Retirement Age of 57, the Government has assumed that he would retire at 57 when he was eligible for a full FERS retirement benefit with 34 years of service.

| Additional Years Expected to Live Post-Retirement | 19 |
| --- | --- |
| Annual FERS Pension Benefit Upon Retirement[5] (Post-Tax) | $39,419 |
| Total Loss Over Years Expected to Live[6] | $2,913,166 |
|  |  |
| Discount Rate | 2.95% |
| Present Value Loss For Income Over Remaining Life Expectancy | $1,960,439.13 |

The assumptions included above yield a net present value of the deceased victim's lost income of $1,960,439.13. These assumptions are reasonable, grounded in fact, and meet the requirements of *Pfeifer* and other cases requiring a demonstration of lost income according to a reasonable set of assumptions.[7]

Specifically, the assumptions are reasonable because of their conservative nature. For example, the Government assumes retirement at the FERS Minimum Retirement Age of 57 rather than 62 (full FERS pension age) or 67 (full Social Security retirement age). But data show that a working-age man with a graduate degree, comparable to the victim, would typically work until the age of 66.[8] The Government's calculations, premised on a retirement years earlier, are therefore reasonable and sound. $1,960,439.13 should be ordered payable to the deceased victim's estate pursuant to 18 U.S.C. § 3663(b)(2)(C).

---

[5] Computation (opm.gov). Due to the assumptions used in the chart, this figure is 34% of the deceased victim's post-tax salary based on the 2022 annualized figure.

[6] 22 years of $103,055 post-tax salary plus 18 years of $39,419 post-tax FERS pension benefit.

[7] These assumptions yield a conservative result, as the Government assumes an early retirement. If the Government were to assume that the deceased victim had worked until age 62 to maximize his FERS benefit at the earliest possible age, the net present value would increase to $2,176,347.99 ($49,044 pension, post-tax, starting at age 63). And assuming a retirement at his Social Security full retirement age of 67 would further increase the net present value to $2,313,853.84 ($54,486 pension post-tax). *See* Ex. A.

[8] *See* Table 4, Krueger & Slesnick, *Total Worklife Expectancy*, 25 J. Forensic Econ. 1, 51-70 (2014).

*Funeral Expenses – 3663(b)(3)*. 18 U.S.C. § 3663(b)(3) provides that "an amount equal to the cost of necessary funeral and related services" is available where, as here, the injury "results in the death of a victim." As a direct result of Defendants' culpable conduct in violation of 21 U.S.C. § 841, the victim lost his life.

The victim's estate has provided a full and detailed accounting of the necessary funeral and related expenses. *See* VIS at 130-149. Those costs and expenses are set forth below.

| Funeral Expense | Amount |
|---|---|
| Funeral Home & Cremation | $2,562.98 |
| Church hall rental | $1,330.00 |
| Catering | $11,332.90 |
| Programs | $405.46 |
| Additional Food | $228.94 |
| Flowers and seed packets | $514.10 |
| Additional flowers | $175.24 |
| Security Services | $500.00 |
| **TOTAL** | **$17,049.62** |

Each of these costs are reasonably foreseeable funeral-related expenses. The family had the victim's body cremated shortly after his death and later held a Celebration of Life ceremony for family, friends, and co-workers. It is reasonable and foreseeable that the victim's ceremony would be well attended, given his untimely death. Likewise, the victim's family hired security services for the funeral; this expense, too, was unfortunately necessary in light of the circumstances surrounding the victim's death. The court should order $17,049.62 as restitution for funeral expenses pursuant to 18 U.S.C. § 3663(b)(2).

*Property Damage – 3663(b)(1)*. During Defendants' attempts to cover up their wrongdoing, some of the victim's property was damaged or otherwise rendered unusable. The victim's iPhone and Apple Watch were disposed of while Defendants Hovanec and Theodorou were attempting to cover up their crime. Those items have not since been located. And because

11

of the trauma associated with this crime, the victim's family could not reasonably use or enjoy T.H.'s vehicle thereafter. The car was repossessed and sold by the lender, but the estate is still subject to a collections dispute on the outstanding debt.

The iPhone, Apple Watch, and car are no longer available to appraise, as they are no longer within the estate's possession. But fair market value can be determined by the estate's expenses on the outstanding debt for those items after they had been destroyed or, in the case of the car, made unusable. *E.g.*, *United States v. Buchanan*, 2023 U.S. App. LEXIS 22104, *26 (6th Cir. 2023) (holding that "retail price" is an appropriate measure of loss under § 3663(b)(1)); *United States v. Wilfong*, 551 F.3d 1182, 1186 (10th Cir. 2008) (the "cost" of destroyed property is a proper measure of restitution). The victim's estate has provided the following accounting of these expenses. *See* VIS at 8, 14-46.

| Expense | Amount |
|---|---|
| iPhone & Apple Watch charges to Verizon | $1,191.23 |
| Volkswagen Tiguan – Outstanding debt | $3,879.38 |
| **TOTAL** | **$5,070.61** |

These expenses are reasonable determinations of the value of the property that was lost through Defendants' culpable conduct. The Court should order $5,070.61 as restitution for lost property pursuant to 18 U.S.C.§ 3663(b)(1).

    2.    <u>Restitution Sought for the Minor Victims</u>

*Psychological Care – 3663(b)(2)(A)*. Restitution ordered under 18 U.S.C. § 3663(b)(2)(A) may include payments to victims of the offense for the reimbursement, and future cost, of mental health treatment. *See* 18 U.S.C. § 3663(b)(2)(A); *United States v. Dickey*, 52 F.4th 680, 687 (7th Cir. 2022) (citing *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001)); *United States v. Serrata*, 679 F. App'x 337, 340 (5th Cir. 2017) (affirming a restitution award that included future

12

psychiatric treatment for a victim of a hate crime); *United States v. Martinez*, 486 F.3d 1239, 1248 (11th Cir. 2007) (affirming an order of restitution for medical tests even though the victim was not "seriously injured" because the MVRA "permits restitution for both physical injury and pecuniary loss"); *United States v. Chavez*, 204 F.3d 1305, 1312 (11th Cir. 2000) (affirming a restitution award for the victim's counseling treatment). *But see United States v. Hicks*, 997 F.2d 594, 601 (9th Cir. 1993) (reversing an order of restitution made pursuant to the discretionary restitution statute under 18 U.S.C. § 3663 for psychological counseling for IRS employees who had not suffered a physical injury).

The statute provides:

> (2) in the case of an offense resulting in bodily injury to a victim--
>
> (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment[.]

18 U.S.C. § 3663A(b)(2)(A).

The statute does not define "bodily injury." However, many courts have interpreted "bodily injury" in the context of the MVRA as an umbrella term that encompasses not only physical damage to a person's body, but also "psychiatric and psychological" damage. *United States v. Breshers*, 684 F.3d 699, 702–03 (7th Cir. 2012) (affirming a restitution award for a victim's psychological treatment, where the victim did not suffer a physical injury, while also acknowledging that some circuits require physical injury to make such an award) (quoting *United States v. Dotson*, 242 F.3d 391, 2000 WL 1820375, at *5 (Table) (10th Cir. 2000) (suggesting that "perhaps 'bodily injury' is a holistic phrase referring to all aspects of the body, physical and psychological")).

13

The Sixth Circuit has not squarely addressed the issue of whether "bodily injury" includes a psychological injury like the Minor Victims'. In *United States v. Patton*, the Sixth Circuit found that a shooting victim's spouse was not entitled to restitution for lost wages, but there is no indication that the spouse put forward evidence of the psychological harm. 651 Fed. Appx. 423, 426-28 (6th Cir. 2016). And *United States v. Evers*, 669 F.3d 645, 656 n.3 (6th Cir. 2012), on which *Patton* was based, makes a statement in *dicta* that the MVRA requires a victim to suffer bodily injury before certain types of restitution are available. Here, the Victim Impact Statements demonstrate the lasting injury that the Minor Victims suffered.

This Court should follow those Circuits that have held that bodily injury includes mental or psychological injuries. For example, the Eleventh Circuit has held that "bodily injury" encompasses the "impairment of . . . [a] mental faculty." *United States v. Finney*, No. 21-10558, 2010 WL 5984905, at *1 (11th Cir. Dec. 16, 2021); *see also United States v. Keelan*, 786 F.3d 865, 873 (11th Cir. 2015) (looking to Congress's choice to define "bodily injury" in Title 18); *United States v. Myers*, 972 F.2d 1566, 1572–73 (11th Cir. 1992) (determining that the "commonly used" definition of "bodily injury" includes an "impairment of function of a . . . mental faculty."); *accord United States v. Bailey*, 405 F.3d 102, 111 (1st Cir. 2005).

In *United States v. Breshers*, the Seventh Circuit affirmed a restitution award under § 3663A(b)(2) for a victim's psychological treatment, transportation to and from the treatment facility, and wages lost as a result of her anxiety. *Breshers*, 684 F.3d at 702 – 03. In that case, the defendant was convicted of kidnapping and interference with commerce by robbery, in violation of 18 U.S.C. §§ 1201(a)(1) and 1951. *Id*. at 700. The victim did not suffer any physical injury during the course of the criminal conduct, but she testified that she later suffered from anxiety and was under psychiatric care as a result of the crime. *Id*. at 700-01. She requested restitution for the

14

cost of her psychiatric treatment, the costs of travel to and from the treatment facility, and the wages she lost because of her anxiety. *Id*. The district court awarded restitution for these costs under § 3663A(b)(2). *Id*. The defendant appealed, arguing that the award was not authorized under the MVRA because the victims did not suffer a *physical* injury. *Id*. at 701 – 02.

The Seventh Circuit affirmed the award. *Id*. at 703. Because the MVRA does not define "bodily injury," the court looked to the definition of "bodily injury" as it is defined in other statutes. *Id*. at 702–03 (citing 18 U.S.C. § 1365(g)(1)(B)(3) defining "bodily injury" as including "impairment of the function of a bodily member, organ, or mental faculty"); U.S.S.G. § 1B1.1, comment. (j) (defining "serious bodily injury" as including impairment of a "function of a bodily member, organ, or mental faculty"); 18 U.S.C. § 249 (adopting the definition of "bodily injury" found in 18 U.S.C. § 1365(g)(1)(B)(3), but specifying that it "does not include solely emotional or psychological harm to the victim"). If Congress had intended "bodily injury" in § 3663 to exclude psychological or purely mental harm, the Court reasoned, it would have said so.

In the present case, the Minor Victims have suffered a "bodily injury," in the form of psychological trauma. This injury entitles them to restitution for mental health treatment, as they are "victims" of the crime within the statute's meaning. *See United States v. Checora*, 175 F.3d 782, 795 (10th Cir. 1999) ("[The decedent's] sons are victims within the meaning of the statute. They have been directly and proximately harmed as a result of their father's death because they have lost, among other things, a source of financial support."). All three children have sought counseling for the trauma and anguish resulting from their father's death, and it is anticipated that they will need to continue counseling in the future.

The past and anticipated future expenses were provided in the victim impact statements. To date, treatment for the Minor Victims' mental health care totals $16,000, with future treatment

15

expected to cost another $110,000 (assuming the Minor Victims only require counseling and treatment until they reach adulthood). Reimbursement for mental health treatment is permissible under the statute in these circumstances. The United States requests an order of restitution that includes the full $126,000 for all such treatment.

## II. THE COURT SHOULD ORDER THE APPLICABLE RESTITUTION AMOUNTS FOR EACH DEFENDANT

### A. AMANDA HOVANEC AND ANTHONY THEODOROU ARE JOINTLY RESPONSIBLE IN FULL

Defendants Amanda Hovanec and Anthony Theodorou pleaded guilty to violating 21 U.S.C. § 841 for their distribution and administration of etorphine. But this was no simple drug-smuggling scheme. Victim T.H. died as a direct and intended result of their conduct. Their criminal conduct is, therefore, the root cause of all the subsequent damage that the victim and his family suffered. Restitution is available to the victim's estate and family for the harm caused. 18 U.S.C. § 3663(a)(1)(A).

Specifically, restitution from Defendants Hovanec and Theodorou's culpable conduct should comprise every form of restitution the Government seeks: (1) lost income; (2) the Minor Victims' costs of psychological counseling; (3) funeral expenses; (4) damage to property as a result of their conduct; and (5) the victim's family's costs and expenses incurred as a function of participating in this criminal proceeding. Defendants' conduct directly and proximately caused this harm to the victim and his family. Because Defendants Hovanec and Theodorou acted together in their criminal conduct, they should each be jointly and severally liable for the full amount.

The Government submits Appendix A, a summary of the requested restitution, as a summary of the restitution requested herein.

### B. ANITA GREEN IS RESPONSIBLE FOR THE MINOR VICTIMS' HARM

Defendant Anita Green pleaded guilty to being an accessory after the fact. 18 U.S.C. § 3. Although this crime did not directly cause T.H.'s death, it contributed to the Minor Victims' trauma and suffering. After all, the Minor Victims had to learn that their own grandmother—who had been watching them—did not look out for their best interests, but rather helped their father's killers cover up their wrongdoing. As a result, the Minor Victims have suffered psychological harm for which they have required, and will continue to require, counseling and treatment. Defendant Green is therefore liable to the same extent as Defendants Hovanec and Theodorou for the costs of these counseling services.

Restitution from Defendant Green should be ordered for the Minor Victims' costs of psychological counseling. 18 U.S.C. § 3663(a)(1)(A).

### C. THE ESTATE'S CIVIL PROCEEDINGS SHOULD NOT AFFECT THIS COURT'S ORDER

The Government is aware of the civil proceeding in Auglaize County between the victim's estate and Defendants. At this time, Defendants Hovanec and Theodorou have been found in default and subject to a judgment; Defendant Green entered into a settlement agreement with the victim's estate. To date, only Defendant Green has made any payments in that case.[9]

The civil judgment against Defendants, which includes punitive and consequential damages not at issue here, should not alter this Court's decision to enter a restitution judgment. Pursuant to 18 U.S.C. § 3664(f)(1), a defendant should receive credit for "any amount later

---

[9] The settlement agreement between T.H.'s estate and Defendant Green provides that the settlement does not cover any amounts subject to Court-ordered restitution in this matter. Accordingly, the Government will not disturb that agreement made between those parties and will not credit Defendant Green for any payments pursuant to that settlement.

recovered as compensatory damages for the same loss by the victim in . . . any State civil proceeding." 18 U.S.C. § 3664(j)(2).  That the victim's estate has received a judgment against Defendants Hovanec and Theodorou is irrelevant; the statute requires <u>payment</u> before Defendants receive any credit.

    The Government will ensure that Defendants Hovanec and Theodorou's so-ordered restitution amounts are credited appropriately for any later recoveries in connection with that civil suit, if and when evidence of such payment is presented to the United States Attorney's Office.  But for purposes of their Judgment here, the Court should order restitution in full as against all three Defendants, as set forth herein.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By:   /s/ Joseph Z. Czerwien
Michelle M. Baeppler (OH: 0065378)
Joseph Z. Czerwien (OH: 0093720)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3748
(216) 522-4542 (facsimile)
Michelle.Baeppler@usdoj.gov
Joseph.Czerwien@usdoj.gov

Alissa M. Sterling (OH: 0070056)
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604
(419) 241-0727
(419) 259-6360 (facsimile)
Alissa.Sterling@usdoj.gov

**Appendix A: Restitution Charts**

For the reasons set forth herein, each Defendant should be found liable as set forth in the following charts:

| Defendant | Lost Income (T.H.) | Funeral Expenses (T.H.) | Damaged Property (T.H.) | Psychological Care (Minor Victims) |
|---|---|---|---|---|
| Amanda Hovanec | $1,960,439.13 (Defendants Hovanec and Theodorou) | $17,049.62 (Defendants Hovanec and Theodorou) | $5,070.61 (Defendants Hovanec and Theodorou) | $126,000 applicable to all Defendants |
| Anthony Theodorou | | | | |
| Anita Green | N/A | N/A | N/A | |

| Defendant | TOTAL RESTITUTION |
|---|---|
| Amanda Hovanec | $2,108,559.36 (joint and several with Theodorou in full; $126,000 joint and several with Green) |
| Anthony Theodorou | $2,108,559.36 (joint and several with Hovanec in full; $126,000 joint and several with Green) |
| Anita Green | $126,000 (all joint and several with Hovanec and Theodorou) |